UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


GREGG DARIUS AZIN, M.D.,

            Plaintiff,

    v.

DENIS MCDONOUGH, Secretary, U.S.
Department of Veterans Affairs,

            Defendant.

Case No. 3:21-cv-00705-YY

FINDINGS AND
RECOMMENDATIONS

YOU, Magistrate Judge.

## FINDINGS

Plaintiff Gregg Darius Azin, M.D., brings this action against defendant Denis
McCullough, Secretary of the U.S. Department of Veterans Affairs, asserting an enforcement
claim under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(1). Compl., ECF 1.
Plaintiff seeks to compel defendant to "take action which has been unlawfully withheld and
unreasonably delayed" regarding back pay and the reinstatement of plaintiff to his former
position at the Veterans Affairs Portland Health Care System ("Portland VA"). *Id.* at 1-2, ECF 1.

Defendant has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)
for lack of subject matter jurisdiction. Mot. 2, ECF 12. Defendant also argues that plaintiff's
claims should be dismissed under Rule 12(b)(6) on the ground that plaintiff has failed to

1 – FINDINGS AND RECOMMENDATIONS

demonstrate "he is entitled to relief" under section 706(1) of the APA. *Id*. For the reasons

discussed below, defendant's motion should be DENIED.

## I.    Standards

### A.    Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court over the

subject matter of the complaint. FED.R.CIV.P. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack

may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

A facial attack "accepts the truth of the plaintiff's allegations but asserts that they are

'insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117,

1121 (9th Cir. 2014) (citing *Safe Air*, 373 F.3d at 1039)). A factual attack "contests the truth of

the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Leite*,

749 F.3d at 1121; *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013). When a defendant

factually challenges jurisdiction, "'no presumptive truthfulness attaches to plaintiff's

allegations.'" *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (quoting *Doe v.

Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)). Once a party has moved to dismiss for lack of

subject matter jurisdiction, the plaintiff "bears the burden to establish subject matter jurisdiction

by a preponderance of the evidence." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d

565, 569 (9th Cir. 2016).

### B.    Rule 12(b)(6)

A Rule of 12(b)(6) motion tests whether there is a cognizable legal theory or sufficient

facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). To

survive a Rule 12(b)(6) motion, "the complaint must allege 'enough facts to state a claim to

relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A Rule 12(b)(6) motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

When evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the plaintiff. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018) (*citing Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)); *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 969 (9th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678).

## II.    Case Background

Plaintiff is a physician and current employee of the Portland VA. Compl. 3, ECF 1. He was hired to work at the Portland VA in 2009 as a vascular surgeon and general surgeon. *Id.* On September 21, 2018, plaintiff performed a surgical procedure involving the placement of a jejunostomy tube ("J-tube"). *Id.* At some point during the procedure, the patient became "confused" under the sedation and attempted to move his body. *Id.* Plaintiff "verbally rebuked the patient with regrettable language and sedation was decreased." *Id.* at 3-4. On September 25, 2018, "the Chief of Vascular Surgery at the Portland VA issued [plaintiff] a written notice that [plaintiff] was being removed from direct patient care duties pending further inquiries." *Id.* at 4. Thereafter, the Portland VA took the following steps:

- On December 4, 2018, the Director of the Portland VA "issued [plaintiff] a written summary suspension of his privileges pending an investigation of his performance of the J-tube procedure and placed [plaintiff] on administrative leave." *Id.*
- On December 17, 2018, "the Chief of Staff of the Portland VA issued [plaintiff] a written notice of 'Proposed Removal and Revocation of Clinical Privileges' based on the charge of Unacceptable Conduct affecting patient care, which included four specifications [of misconduct] tied to the J-tube procedure on September 21, 2018." *Id.*
- On January 24, 2019, "the Director of the Portland VA issued a written decision in which he both removed [plaintiff] from federal employment and revoked his clinical privileges at the Portland VA on the basis of 'Unacceptable Conduct,' effective February 1, 2019." *Id.*

Upon receipt of the Director's decision, plaintiff timely appealed the action to a Disciplinary Appeals Board ("DAB") that consisted of three physician panel members who were not from the Portland VA. *Id.* at 5. In April 2019, the DAB conducted a two-day evidentiary hearing where "[b]oth parties had counsel," *id.*, and on October 30, 2019, the DAB issued its written findings and recommendations through Department of Veterans Affairs Board Action Form 10-2543. Feldman Decl., Ex. 1 at 1, ECF 13-1. In its findings, the DAB unanimously sustained three of the four specifications of misconduct. *Id.* at 11. However,

> [t]he Board found that the [Director's] penalty was not in the tolerable limits of reasonableness given the specifications that were sustained, the weight the Deciding Official gave to Specification 4 that was not sustained, the fact that this event was a first time offense for [plaintiff] according to Agency records, and the information the Deciding Official considered factual that was not factual[.]

*Id.* The DAB issued three recommendations: (1) "Charge of Unacceptable Conduct is sustained"; (2) "Recommended penalty of Removal is not sustained"; and (3) "The Board recommends the Agency penalty be mitigated to a 60-day Suspension." *Id.* at 23.

In November 2019, the DAB's findings and recommendations were sent via Form 10-2543 to the VA's Principal Deputy Undersecretary for Health ("PDUSH") "for review and final

action." Compl. 5, ECF 1. On December 19, 2019, the PDUSH issued a final decision to plaintiff

in the form of a written letter that included the following statements:

> Your appeal to a Disciplinary Appeals Board (DAB) regarding your removal from
> Federal service and revocation of privileges at the VA Portland Health Care
> System, Portland, OR, was received on January 31, 2019. . . .
>
> The Board recommended that the removal be reduced to a 60-calendar day
> suspension, and it is my decision to execute the decision of the Board. . . .
>
> [W]ithin 30 calendar days of this decision, the Director of the [Portland VA] will
> cancel the removal from your Official Personnel Folder and replace it with a 60-
> calendar-day suspension and return you to duty. Additionally, within 60 calendar
> days of this decision your local Human Resources Office will process the
> corrections necessary to ensure that you are paid the appropriate amount of back
> pay on a timely basis, typically within 120 calendar days.

Feldman Decl., Ex. 2 at 1, ECF 13-2. The PDUSH also checked "approved" on page two of

Form 10-2543 under "Action by Approving Authority," and noted in his letter to plaintiff that "a

copy of the approved Board action is enclosed." *Id.*

When plaintiff received the PDUSH's "final agency decision," he read the decision as

"limiting the scope of the proposed removal and loss of privileges to a 60-day suspension." Pl.'s

Opp. 1, ECF 16. Plaintiff believed that "he won his appeal, successfully challenging the

proposed  removal and termination of privileges." *Id.* at 2.

However, since the issuance of the PDUSH decision, the Portland VA has not returned

plaintiff to his former position as a vascular surgeon and has not restored his clinical privileges.

Compl. 6, ECF 1. Plaintiff also contends the Portland VA has never "determine[ed] the

appropriate amount of back pay" he is due and has never paid plaintiff "the appropriate amount

of back pay." Pl.'s Opp. 15-16, ECF 16. Plaintiff maintains that, while the Portland VA "has

randomly provided extra pay in occasional paychecks that appear to constitute back pay,"

Compl. 7, ECF 1, it has "failed to determine and to process the corrections to his pay and

benefits within 60 days . . . necessary to ensure that [he] would be paid the appropriate amount of back pay within approximately 120 days," as specified in the PDUSH's final decision of December 19, 2019. *Id*.

## III.  Discussion

Again, plaintiff brings this action under 5 U.S.C. § 706(1) seeking enforcement of defendant's final agency action on December 19, 2019. Compl., ECF 1. Plaintiff's first claim alleges "a failure to reinstate as vascular and general surgeon with clinical privileges," and his second claim alleges "a failure to determine and process corrections to ensure appropriate pay and benefits." *Id.* at 8, 10. Defendant argues in response—and specifically in support of both its Rule 12(b)(1) and Rule 12(b)(6) motions—that plaintiff's claim seeking his former position should be dismissed because "Plaintiff cannot show that the Portland VA was required to reinstate Plaintiff's privileges following the Board and PDUSH decisions," and because "the Portland VA retained discretion over how to implement the decisions." Mot. 13, ECF 12. Defendant argues that plaintiff's claims regarding back pay should be dismissed because plaintiff has not shown a failure to act, nor entitlement to the relief sought. *Id.* at 17-20.

Courts typically address a Rule 12(b)(1) motion to dismiss before addressing a Rule 12(b)(6) motion "because if the Court lacks jurisdiction over [the] case it has no power to evaluate the merits of [the] . . . Complaint." *Garcia v. Maxim*, No. 3:20-CV-01922-BEN-LL, 2021 WL 2645923, at *3 (S.D. Cal. June 28, 2021). However, courts can effectively consolidate or collapse such motions into a single motion to dismiss when the legal analysis overlaps—as it does between a Rule 12(b)(1) motion asserting a facial attack and a Rule 12(b)(6) motion to dismiss. Under both types of motions, "all factual allegations . . . are taken as true and all reasonable inferences are drawn in [the plaintiff's] favor." *Pride v. Correa*, 719 F.3d 1130, 1133

(9th Cir. 2013); *see also Leite*, 749 F.3d at 1121 ("The district court resolves a facial attack [to its subject matter jurisdiction] as it would a motion to dismiss under Rule 12(b)(6).").

Here, defendant does not designate its Rule 12(b)(1) motion as either 'facial' or 'factual,' but defendant's reliance on "evidence outside the pleadings" is suggestive of a 'factual attack'— under which plaintiff's claims would not be entitled to a presumption of truth. *See Terenkian*, 694 F.3d at 1131. Given this, and in light of the presumption of truth plaintiff's complaint *is* entitled to under a Rule 12(b)(6) motion to dismiss, defendant's motion to dismiss for lack of subject matter jurisdiction might be most sensibly analyzed in advance of and separate from the Rule 12(b)(6) motion. However, defendant presents its Rule 12(b)(1) and Rule 12(b)(6) motions under a single analysis by asserting the same arguments, authority, and evidence in support of both motions—without distinction. *See* Mot., ECF 12. Further, and most importantly, the grounds for establishing subject matter jurisdiction for a section 706(1) claim under the APA are exactly the same as the elements to state a section 706(1) claim. *See Khan v. Johnson*, 65 F. Supp. 3d 918, 925 (C.D. Cal. 2014) (stating the same elements to state a section 706(1) claim as those needed to establish subject matter jurisdiction for such a claim). In short, defendant's motions to dismiss under Rule 12(b)(1) and under Rule 12(b)(6) present overlapping questions regarding the sufficiency of plaintiff's allegations for purposes of subject matter jurisdiction and for asserting a claim upon which relief may be granted. Therefore, defendant's motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6) are analyzed concurrently.

A. **Section 706(1) Claim—Subject Matter Jurisdiction**

"'It is well established that a district court has subject-matter jurisdiction over any sufficiently stated claim for relief under the APA.'" *Khan*, 65 F. Supp. 3d at 925 (citing *Beyene v. Napolitano*, No. C 12-01149 WHA, 2012 WL 2911838, at *4 (N.D. Cal. July 13, 2012) (citing

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–65 (2004)). To invoke jurisdiction under the APA for a failure to act under 5 U.S.C. § 706(1), "a petitioner must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty." *Beyene*, 2012 WL 2911838, at *4 (citing *SUWA*, 542 U.S. at 63–65 (2004)).

### B.      Section 706(1) Claim—Elements

In *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55 (2004), the Supreme Court addressed the "limits the APA places upon judicial review of agency inaction" for claims brought under 5 U.S.C. § 706(1). *Id.* at 61. As the Court noted, the APA authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Id.* (citing 5 U.S.C. § 702). Where an "'agency fails to carry out a mandatory, nondiscretionary duty,'" *id.* (citation omitted), section 706(1) provides that "the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." *Id.* at 62 (quoting 5 U.S.C. § 706(1)). The "'agency action' complained of must be '*final* agency action,'" and § 551(13) defines 'agency action' to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act*." *Id.* at 61-62 (emphasis in original). Where a plaintiff asserts a claim under section 706(1) based on an agency's "failure to act," "[t]he important point is that a 'failure to act' is properly understood to be limited . . . to a *discrete* action." *Id.* at 63 (emphasis in original). Further, "the only agency action that can be compelled under the APA is action legally *required*." *Id.* at 63 (emphasis in original). Thus, a court can compel agency action under section 706(1) "only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1071 (9th Cir. 2016) (citing *SUWA*, 542 U.S. at 63-64).

In *SUWA*, the plaintiff asserted claims against the Bureau of Land Management ("BLM") under section 706(1) seeking to "compel agency action," but the Supreme Court held that the BLM's alleged "failure to act" did not constitute "discrete agency action." *Id.* at 67. The plaintiff sought a court order directing the BLM to comply with its mandate to manage designated Wilderness Study Areas ("WSAs") "in a manner so as not to impair the suitability of such areas for preservation as wilderness"—particularly with regard to BLM rules regarding off-road vehicles ("ORVs"), but the Court held that the claim "lack[ed] the specificity requisite for agency action," and emphasized that courts can only compel "*discrete* agency action" under section 706(1). *Id.* at 66 (emphasis in original). As the Court explained, section 706(1) does not empower courts to "enter general orders compelling compliance with broad statutory mandates" because such judicial action would risk "injecting the judge into day-to-day agency management." *Id.* at 66-67. Although the plaintiff in *SUWA* cited statutory provisions and agency policies to support its claim, the Court found that the authority "assuredly does not mandate, with the clarity necessary to support judicial action under § 706(1), the total exclusion of ORVs." *Id.* at 66.

The Court also held that the plaintiff failed to show that the BLM was "legally required" to "manage the public lands . . . in accordance with the land use plans[.]" *Id.* at 67 (citing 43 U.S.C. § 1732(a)). Although the Court acknowledged that the "statutory directive" cited by the plaintiff prevented the BLM "from taking actions inconsistent with the provisions of a land use plan," the directive included no "binding commitment than can be compelled under section 706(1)." *Id.* at 69. In fact, BLM regulations made it clear that "land use plans are a preliminary step in the overall process of managing lands" and are "'not a final implementation decision.'" *Id.* Because a BLM land use plan generally "guides and constrains [agency] actions" but does not

"prescribe them," the plaintiff failed to show that the BLM had not carried out a "legally binding

commitment enforceable under section 706(1)." *Id*. at 72.

### 1.     Discrete Agency Action

Here, plaintiff's claims for relief under section 706(1) bear all the marks of discrete

agency action. Unlike the plaintiff in *SUWA*, plaintiff seeks enforcement of a "specific,

unequivocal command," 542 U.S. at 66, *i.e.*, the PDUSH's December 19, 2019 letter that

rendered the final agency decision in plaintiff's appeal from the Portland VA's initial

employment action. *See* Compl. 5, ECF 1. Unlike the broad statutory mandate and inchoate land

use plans at issue in *SUWA*, *see* 542 U.S. at 67-68, this case involves a sole federal employee

who properly appealed an adverse employment action through agency procedures and received a

final decision. *See* Compl., ECF 1. The discrete nature of the agency action plaintiff seeks to

enforce is made plain through the text of the PDUSH's final decision that stated:

> [W]ithin 30 days of this decision, the Director of the [Portland VA] will cancel
> the removal from your Official Personnel Folder and replace it with a 60-
> calendar-day suspension and return you to duty. Additionally, within 60 calendar
> days of this decision your local Human Resources Office will process the
> corrections necessary to ensure that you are paid the appropriate amount of back
> pay on a timely basis, typically within 120 calendar days.

Feldman Decl., Ex. 2 at 1, ECF 13-2. Much like the traditional "mandamus remedy" discussed

by the Supreme Court in *SUWA*, the PDUSH decision involves the "ordering of a precise,

definite act . . . about which [an official] has no discretion whatever." *SUWA*, 542 U.S. at 63.

Indeed, by directing the Portland VA to take specific and limited actions related to plaintiff's

position and pay within a specified timeline, the PDUSH ordered "a ministerial or non-

discretionary act"—the kind of action section 706(1) "empowers a court . . . to compel." *Id*. at

64. Thus, plaintiff has alleged sufficient facts to show that his section 706(1) claims seek to

compel "discrete agency action"—that is, reinstatement to his former position as vascular

surgeon and the payment of appropriate back pay. *See Vietnam Veterans of Am.,* 811 F.3d at 1076 (holding that an Army regulation that "unequivocally command[ed]" the Army to "provide former test subjects with current information about their health, and to provide medical care for harm and diseases caused by the experiments" constituted "a discrete agency action" under section 706(1)).

### 2. Required Agency Action

Plaintiff has also alleged sufficient facts to show that the PDUSH letter directed the Portland VA to take steps that it was "*required to take.*" *SUWA*, 542 U.S. at 64 (emphasis in original). There is no dispute that the PDUSH's December 19, 2019 decision constituted final agency action,[1] or that the Portland VA was required to effectuate the final decision. Rather, the parties only disagree as to the exact meaning and effect of the PDUSH communication.

Plaintiff characterizes the letter as "fully adopting the Board's recommended findings and its recommendation to cancel the removal, replace it with a 60 calendar-day suspension, and reinstate to duties as surgeon." Compl. 5, ECF 1. Plaintiff further contends that the PDUSH letter "compelled [the Portland VA] to determine and process the corrections necessary to ensure that Plaintiff is paid the appropriate amount of pay upon reinstatement, including current pay and back pay, including but not limited to, restoration of sick and annual leave and numerous benefits." Compl. 10, ECF 1.

Defendant counters that "[t]he PDUSH decision required that Plaintiff be returned to duty, but did not prescribe the particular way in which the Portland VA was required to implement the decision." Mot. 15., ECF 12. Defendant also insists that plaintiff "cannot show

---

[1] The PDUSH's final decision letter to plaintiff states: "This is the final administrative action in this case." Feldman Decl., Ex. 2 at 2, ECF 13-2. *See also* 38 U.S.C. § 7462(d)(4) ("The Secretary's execution of a board's decision shall be the final administrative action in the case.").

that the Portland VA was required to reinstate Plaintiff's privileges following the Board and PDUSH decisions." *Id.* at 13. Lastly, defendant argues that plaintiff has not shown a "failure to act" regarding the Portland VA's remittance of back pay, and it objects to plaintiff's prayer for performance pay, retraining, attorneys' fees, and corrections to his record. *Id.* at 19-20.

These issues are addressed more fully below.

### a.    The PDUSH Order Re: Privileges and Reinstatement to Former Position

While the parties cite little to no authority to support their respective positions, the Northern District of Alabama recently issued a decision in a section 706(1) case with analogous facts that proves instructive. In *Hutchinson v. Wilkie*, No. 7:19-CV-01168-LSC, 2021 WL 1192981, at *1 (N.D. Ala. Mar. 30, 2021), the plaintiff had been employed by a VA hospital as a radiologist until he lost his privileges and was removed from his position based on misconduct. *Id.* Like plaintiff in this case, the plaintiff in *Hutchinson* appealed the hospital's decision to "remove him and revoke his privileges" to the hospital's DAB. *Id.* Thereafter, the DAB "mitigated [the plaintiff's] penalty to a thirty-day suspension," and the PDUSH ultimately ordered the VA hospital "to cancel [Hutchinson's] removal, and replace it with a 30-day suspension, and return [him] to duty." *Id.* at * 1. The VA hospital in *Hutchinson*, like the Portland VA in the present case, re-hired the plaintiff, but "did not return his clinical privileges" and "never allowed [the plaintiff] to perform radiological duties." *Id.* Based on the DAB's findings and recommendations, the district court found that the VA hospital's removal of the plaintiff and the revocation of his privileges "constitute[d] a single, intertwined 'penalty,'" and held that the DAB "unambiguously overturn[ed] both . . . removal *and* his revocation." *Id.* at *4 (emphasis added). The district court further held, "[b]y mitigating [the plaintiff's] penalty to a

thirty-day suspension, the DAB impliedly ordered a reinstatement of [his] privileges as well." [2]

*Id.*

Here, in a similar vein, the Portland VA rehired plaintiff but has not restored him to his former position as vascular and general surgeon and has not reinstated his privileges. [3] Further, defendant's communications concerning plaintiff's misconduct and the actions that followed strongly indicate that the Portland VA's initial decision to remove plaintiff from employment and revoke his privileges was a "single, intertwined penalty." *See id.* On January 24, 2019, the Portland VA notified plaintiff of its decision to "remove [him] from federal employment and revoke[] his clinical privileges," Compl. 4, ECF 1, and the DAB's findings and recommendations—as contained in Form 10-2543—refer to both the removal and the revocation in the section entitled, "Action being appealed." Feldman Decl., Ex. 1 at 1, ECF 13-1. Form 10-

---

[2] The court in *Hutchinson* also found no conflict between its "interpretation" of the DAB recommendations regarding reinstatement of privileges and the "DAB's comments about the revocation of clinical privileges in Section VII of its decision"—a section that appears as "Section X" in the DAB's recommendation in the present case. *Id.* While Section VII of the DAB report in *Hutchinson* referred to the revocation of the plaintiff's privileges, the court found that the section had "no bearing on the DAB's subsequent order" regarding reinstatement of privileges because the "DAB's comments were 'solely' for the purpose of determining whether [the hospital's] revocation of clinical privileges is reportable to the National Practitioner Data Base." *Id.* The same is true here. *See* Feldman Decl., Ex. 1 at 20-21, ECF 13-1 (containing "Section X" that states, "[t]he Board has concluded the sustained charge identified below represents substandard care, professional incompetence or professional misconduct. This determination is made solely to determine whether the suspension of clinical privileges by the Medical Center Director is reportable to the National Practitioner Data Base.").

[3] Plaintiff reports that he was reassigned to "computer data entry regarding quality care information from surgical cases" and "is now listed in the VA contact directory with the title 'SQN' for Surgical Quality Nurse." Compl. 6, ECF 1. Defendant claims that plaintiff "was re-credentialed" and "has been returned to work as a physician coordinator for surgical quality improvement." Mot. 3, 6, ECF 12. Whatever position plaintiff currently holds, the parties agree that he has not worked as a vascular and general surgeon at the Portland VA since his DAB hearing in April 2019, and further agree that plaintiff's clinical privileges have not been restored by the Portland VA since the DAB hearing.

2543 also states that plaintiff "suffered a major adverse action (Removal & Revocation of privileges)" and contains numerous references to discussions among Portland VA staff regarding plaintiff's privileges that took place in advance of the Director's decision to revoke plaintiff's privileges on January 24, 2019. *Id*. at 4. Given the Director's initial penalty regarding plaintiff's position and privileges, and considering the clear scope of plaintiff's appeal and the plain language in the DAB's findings, it is reasonable to infer that the DAB's statement, "the Board recommends the Agency penalty be mitigated to a 60-day suspension," encompassed *both* the Portland VA's penalty of removal *and* the revocation of plaintiff's privileges. *See Hutchinson*, 2021 WL 1192981, at *4.

As the court found in *Hutchinson*, the "PDUSH's review of the DAB's decision further supports this interpretation." *Id.* In *Hutchinson*, the PDUSH "recognized that [the plaintiff] framed his appeal to the DAB as a challenge to both his 'removal *and* revocation of privileges,'" and the PDUSH "chose to 'execute'" the DAB's mitigated penalty recommendation by directing the VA hospital to "cancel . . . removal" and "return [the plaintiff] to duty." *Id.* Thus, the *Hutchinson* court held, the PDUSH "plainly ordered [hospital] to restore the duties [the plaintiff] had before his disciplinary hearing—namely, his duties as Chief of Radiology." *Id.* Here, by extension, when the PDUSH issued an identical final decision that informed plaintiff the Portland VA would "cancel the removal" and "return you to duty," this language is most plausibly understood as directing the Portland VA to "restore the duties" plaintiff had before his DAB hearing—namely, his duties as vascular and general surgeon. As the court in *Hutchinson* explained, "[b]ecause the first order [to 'cancel removal'] requires [the hospital] to rehire [plaintiff], the second order ['return to duty'] must provide some additional meaning." *Id*. As the court further noted, the term "return" commonly means "to restore to a former . . . state." *Id.*

(citing merriam-webster.com). Under the same reasoning, when the PDUSH informed plaintiff that, "within 30 days of this decision, the Director of the [Portland VA] will . . . return you to duty," Compl. 6, ECF 1, the PDUSH directed the Portland VA to give plaintiff his former job back. Therefore, with respect to the second element of his section 706(1) claim, plaintiff has plausibly alleged that the Portland VA was *required to* return plaintiff to his former duties as vascular and general surgeon and reinstate his clinical privileges. *See Hutchinson*, 2021 WL 1192981, at *4.

### b.    The PDUSH Order Re: Back Pay

Regarding the issue of back pay, plaintiff has also alleged sufficient facts to show that the Portland VA "failed to take agency action . . . that it was *required* to take." *See SUWA*, 542 U.S. at 61 (emphasis added). First, defendant does not dispute that the PDUSH decision of December 19, 2019 communicated to plaintiff that the Portland VA would, "within 60 calendar days[,] . . . process the corrections necessary to ensure that you are paid the appropriate amount of back pay on a timely basis, typically within 120 calendar days." Feldman Decl., Ex. 2 at 1, ECF 13-2. Further, defendant does not contest that the Portland VA has not yet remitted to plaintiff the full amount of back pay that plaintiff claims is due. Instead, defendant argues that plaintiff "has not plead a viable failure to act claim" because "the agency has taken action in compliance with the final agency decision" by paying plaintiff "regular paychecks of the last 17 months" and by providing him with "at least some back pay." Mot. 17, ECF 12.

In making this argument, defendant relies on *WildEarth Guardians v. Chao*, 454 F. Supp. 3d 944, 956 (D. Mont. 2020), a case that challenged the failure of two federal agencies to comply with the Mineral Leasing Act regarding mandatory inspections of all pipelines on federal lands. *Id*. at 946. In *WildEarth*, the district court noted that the defendants had "taken some steps"

toward statutory compliance and found that the plaintiff's claim "ultimately challenge[d] '*how* Defendants carried out their duty, not whether they did so at all.'" *Id.* at 954 (citation omitted) (emphasis in original). Thus, the district court expressed concern that a court order compelling action in the midst of the defendants' on-going efforts would risk "judicial interference with agency discretion in carrying out its duties." *Id.* at 955. The district court further noted that it had "a difficult time envisioning an injunction to remedy [the plaintiff's] grievance that would not violate the specific warning in *SUWA* that a court 'has no power to specify what the action must be' nor 'set forth the content of [] regulations.'" *Id.* at 956 (quoting *SUWA*, 542 U.S. at 65). Thus, the court held that the plaintiff had not shown that the defendant agencies had "failed to act." *Id.*

Here, in contrast, the issue is *whether* the Portland VA has paid plaintiff the full back pay to which he is entitled under the PDUSH's final decision by providing plaintiff with "extra pay in occasional paychecks that appear to constitute partial back pay"—and not *how* the Portland VA has done so. Unlike the claims at issue in *SUWA* and *WildEarth*, plaintiff's claim for full remittance of back pay does not ask the court "to supervise an agency's compliance with a broad statutory mandate," *id.* at 956, or "to improve an agency's performance or operations." *Id.* at 952 (internal citations and quotation marks omitted)*.* Thus, there is no risk of the court "engag[ing] in day-to-day oversight" of any agency action or operations. *See Id.* Rather, plaintiff's section 706(1) claim alleges the kind of agency obligation "where the failure to act could be remedied by a court's straightforward injunction." *Id.* at 955 (citations omitted). Defendant's reliance on *WildEarth* is therefore misplaced, and its argument that plaintiff has not shown a "failure to act" regarding back pay is without merit.

### c.    Plaintiff's Prayer for Relief

As a final matter, defendant contests plaintiff's prayer for relief to the extent plaintiff

seeks "performance pay," "re-training at a VA hospital other than Portland and/or with another

facility," "all just and necessary corrections and reports to be prepared and sent by the VA to

professional licensing and reporting agencies to correct and restore [plaintiff's] professional

record," and "reasonable attorneys' fees and costs for bringing this action." Compl. 11-12,

ECF 1; Mot. 19, ECF 12. Defendant argues that plaintiff's section 706(1) claims should be

dismissed because he is not entitled to performance pay or attorneys' fees and because "nothing

in the Board or PDUSH decisions . . .  compels the agency to provide correction to Plaintiff's

record or provide retraining[.]" Mot. 19, ECF 12.

However, "[a] prayer for relief does not provide any basis for dismissal under Rule 12[.]"

*Jordan v. United States,* No. 15-CV-1199 BEN (NLS), 2015 WL 5919945, at *2-3 (S.D. Cal.

Oct. 8, 2015). Indeed, "[b]ecause a 12(b)(6) motion to dismiss challenges the legal sufficiency of

the pleadings, not the appropriateness of the relief sought, a motion to dismiss is not the proper

mechanism to challenge a prayer for relief." *Com. Point Cap., Inc. v. First Data Corp*., No. 19-

CV-556-W (LL), 2019 WL 7020057, at *10 (S.D. Cal. Dec. 20, 2019). Thus, while it is clear that

"a court presented with a valid § 706(1) claim can order what the law requires, but no more,"

*Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 20 (D.D.C. 2017) (citation omitted), it

is also clear that a motion to dismiss under Rule 12(b)(6) tests the sufficiency of a plaintiff's

complaint, and no more. *See Mecum v. Wells Fargo Bank, N.A.*, No. C15-1302JLR, 2016 WL

1047435, at *5–6 (W.D. Wash. Mar. 9, 2016) ("Because a prayer for relief is a remedy and not a

claim, a Rule 12(b)(6) motion to dismiss for failure to state a claim is not a proper vehicle to

challenge the requested relief."). Therefore, to the extent defendant's motions to dismiss are

based on the remedies plaintiff seeks, defendant's motions lack merit. *See id.* (denying the defendant's motion to dismiss because "a Rule 12(b)(6) motion is an improper vehicle to challenge the requested relief").

In sum, on a motion to dismiss, a plaintiff needs to "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and a complaint needs "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Here, plaintiff has satisfied these pleading standards by plausibly alleging that defendant "failed to take a *discrete* agency action that it is *required to take*." *SUWA*, 542 U.S. at 6 (emphasis in original). Defendant's motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6) therefore fail. *See Pit River Tribe v. Bureau of Land Mgmt.,* 512 F. Supp. 3d 1055, 1064 (E.D. Cal. 2021) (denying a federal agency's motion to dismiss the plaintiffs' section 706(1) claims where plaintiffs plausibly alleged that the agency had a "legal duty" under agency regulations to terminate a lease under conditions that plaintiffs alleged had occurred) (citing *Vietnam Veterans*, 811 F.3d at 1079)).

## RECOMMENDATIONS

Defendant's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim (ECF 12) should be DENIED.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Monday, November 15, 2021.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  October 29, 2021.


/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge